# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANIS CATES and ANDREW ALLISON individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DUN & BRADSTREET, INC., a Delaware corporation,<br><br>*Defendant*. | CASE NO. |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Tranis Cates and Andrew Allison bring this Class Action Complaint against Defendant Dun & Bradstreet, Inc. ("D&B") to stop its practice of making unsolicited calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiffs, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Defendant D&B is a leading source of commercial data, analytics, and insight on businesses, and owns and operates a commercial database containing information on more than 235 million companies from around the world.

2. To grow and maintain its database, D&B engages in widespread telephone campaigns to businesses and consumers alike. Ultimately, D&B uses the information acquired by its telephone campaigns to sell to other companies as "risk and finance solutions, operations & supply solutions, marketing solutions, and sales solutions."

1

3. In addition, D&B markets products and services directly to the businesses it calls, such as the "Small Business Start Kit," "DUNS file," "D&B Credibility Review," and many other products aimed at small to medium businesses.

4. Defendant's "D&B Credibility Review," for illustration, is an online business directory where a business is provided with a "free" listing but can purchase premium features, such as expanded listings, enhanced keywords that purportedly assist in marketing, and the ability to advertise on competitors' listings. Annual subscriptions to this service range from $599 to $1,199.

5. Thus, D&B's purpose for making phone calls to these consumers and businesses is two-fold: (1) to acquire and confirm business information so as to update and maintain its business database (and to ultimately sell access to that information to other businesses), and (2) to solicit businesses to purchase and/or use D&B's small business products and premium online business directory.

6. Unfortunately, D&B often makes its telemarketing calls to consumers and businesses without prior express consent.

7. Worse, D&B makes calls to thousands of consumers whose phone numbers are in no way connected to any business.

8. The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") was enacted to protect consumers from unsolicited and repeated commercial telephone calls exactly like those alleged in this case. Defendant makes these calls despite the fact that neither Plaintiffs nor the other members of the putative Classes ever provided express consent to receive such telemarketing calls.

9. Likewise, Defendant placed telemarketing calls to consumers who registered their

telephone numbers with the National Do Not Call Registry for the specific reason of avoiding telemarketing calls.

10. By making the phone calls at issue in this Complaint, Defendant caused Plaintiffs and the other members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

11. In response to Defendant's unlawful conduct, Plaintiffs filed the instant lawsuit and now seek an injunction requiring Defendant to cease all unsolicited calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

12. Plaintiff Tranis Cates is a natural person and resident of the State of Texas.

13. Plaintiff Andrew Allison is a natural person and resident of the State of California.

14. Defendant Dun & Bradstreet, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 103 John F Kennedy Parkway, Short Hills, New Jersey 07078. Dun & Bradstreet does business throughout the United States, the State of New Jersey, and in this District.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

16. The Court has personal jurisdiction over Defendant and venue is proper in this

District because Defendant transacts significant amounts of business within this District and its headquarters are located in this District.

## COMMON FACTUAL ALLEGATIONS

17. Defendant D&B services two types of customers: business looking for information on other companies and businesses seeking to enhance and promote their own products and services. For its first category of customers, Defendant operates and maintains an immense database containing information on businesses around the world. For its second category of customers, Defendant sells premium online business listings that purportedly improve a company's marketing capabilities and credibility.

18. In an effort to promote these products and services, Defendant made (or had made on its behalf) thousands of telephone calls to members of the Classes, including Plaintiffs, without consent (and in spite of the fact that many were registered on the National Do Not Call Registry).

19. Defendant's calls begin as free, innocuous offers to let businesses "update their records" maintained by D&B. However, the underlying purpose of these calls is to introduce the business to D&B so that Defendant can sell its products and services, such as its premium business directory listings.

20. Oftentimes, D&B makes these calls without the prior consent of the businesses. And in its zeal to maintain the industry's largest business directory, D&B calls consumers on their personal telephones even when they do not currently own any businesses or phone numbers that have ever been associated with a business.

21. Nevertheless, Defendant makes these unsolicited calls daily. Worse, when a consumer answers one of Defendant's calls and expressly requests to not receive any further

calls, Defendant persists—*even after multiple requests for Defendant to stop calling*.

22. In making the phone calls at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

23. All the more problematic, many of the call recipients, like Plaintiff Allison, were registered on the National Do Not Call Registry at the time the calls were made. That is, those consumers had taken the affirmative step to be listed in a national database for the express purpose of not receiving telemarketing calls.

24. Defendant did not abide by the National Do Not Call Registry and did not institute proper internal do-not-call procedures to prevent calls from being made to (1) telephone numbers listed on the National Do Not Call Registry and (2) telephone numbers that were (or should have been) listed on its internal do-not-call list as a result of consumers requesting not to be contacted.

25. Neither Plaintiffs nor the other members of the putative Classes ever consented to have Defendant make telemarketing calls to them.

26. Plaintiffs' experiences are corroborated by numerous consumer complaints appearing online. For example, over one hundred complaints have been reported online for just

one of the phone numbers D&B used to call Plaintiff Cates.[1] On information and belief, Defendant uses a host of distinct telephone numbers to place its telemarketing calls to consumers and business.

27.  The large number of consumer complaints indicate that Defendant placed calls to consumers without permission and on a repeat basis. Indeed, Defendant made the calls despite not having the necessary consent to do so at the time the calls were effectuated, and worse, even after it received repeated requests from Plaintiffs and the members of the putative Classes to stop.

## FACTS SPECIFIC TO PLAINTIFF CATES

28.  Plaintiff Cates started receiving daily calls from (973) 852-4473 on his personal cellular phone number.

29.  Cates has had his personal cellular phone number for more than ten years and has never listed or used it for any business purpose.

30.  Specifically Cates received numerous calls throughout December 2014, including, at least, on December 17th, 18th, 19th, 22nd, 23rd, and 24th.

31.  On December 19, 2014, Cates answered the call and heard a several-second delay on the other end of the line until a live operator came on the line and identified herself as a D&B agent. As soon as the live operator went into the sales pitch described above, Plaintiff told the agent that he was not interested and requested that he not be called again.

32.  Despite his request, Cates received at least three more calls from Defendant.

33.  Thereafter, Cates called the phone number (973) 852-4473 on at least two occasions in an effort to stop the calls. Each time Plaintiff called, he was greeted by a recorded

---

[1] *Getting calls from 973-852-4473? 11/11*, http://800notes.com/Phone.aspx/1-973-852-4473/9 (last visited Mar. 2, 2015).

6

message stating, "Thank you for calling Dun & Bradstreet…if you're returning our call, we did call you in an attempt to update our records. You don't have to do anything at this time, we'll call back later to collect the data. Thank you for calling Dun & Bradstreet."

34. Plaintiff Cates never authorized D&B to call him on his cell phone and he has no relationship with D&B.

35. Defendant was and is aware that the above-described telephone calls were being made, and that the telephone calls were being made to consumers, despite the fact that Defendant did not have the necessary consent to make such calls.

## FACTS SPECIFIC TO PLAINTIFF ALLISON

36. Plaintiff Allison began receiving calls on his cellular telephone in or around September 2014 from several different phone numbers with an area code of 831. When he would answer the call, an operator would identify themselves as a D&B agent and begin the conversation by requesting information to update credit information for a business he purportedly owned.

37. Plaintiff answered many of Defendant's calls and requested each time that Defendant stop calling.

38. Plaintiff Allison does not own any businesses and has been retired for more than ten years.

39. To make matters worse, Plaintiff Allison registered his cellular telephone number on the National Do Not Call Registry many years ago and has continuously re-registered his number. Plaintiff Allison most recently re-registered his cellular phone number with the National Do Not Call Registry on February 15, 2014, more than thirty days prior to receiving calls from Defendant.

40. Overall, Defendant placed numerous calls to Plaintiff Allison that he neither wanted nor consented to.

## CLASS ALLEGATIONS

41. Plaintiff Cates and Plaintiff Allison bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and a Class of similarly situated individuals defined as follows:

> **Cell Phone Class**: All individuals in the United States who (1) received a telephone call on their cellular telephone; (2) from or on behalf of Dun & Bradstreet (3) for which the caller had no record of prior express written consent to make such telephone call at the time it was made.

Plaintiff Allison brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> **Do Not Call Class**: All individuals in the United States (1) who had his or her cellular telephone number(s) registered with the National Do Not Call Registry; (2) to whom Defendant Dun & Bradstreet or an agent acting on their behalf made more than one telephone call; (3) promoting Defendant Dun & Bradstreet's services; (4) within any 12-month period; and (5) for whom Defendant Dun & Bradstreet or its agents had no current record of express consent to make such telephone calls at the time they were made.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42. **Numerosity**: The exact size of the Classes is unknown and not available to

Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be identified through Defendant's records.

43.     **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

44.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

45.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common and predominant questions for the Classes include, but are not necessarily limited to, the following:

    (a)     whether Defendant's conduct violated the TCPA;

    (b)     whether Defendant made telephone calls to the Cell Phone Class members utilizing an automatic telephone dialing system;

    (c)     whether Defendant systematically made telephone calls to members of the Cell Phone Class and the Do Not Call Class who did not provide Defendant with their prior express consent to receive such telephone calls as required by the TCPA;

  (d)  whether Defendant systematically made telephone calls to members of the Do Not Call Class whose telephone numbers were registered with the National Do Not Call Registry; and

  (e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Class Action Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiffs Cates and Allison and the Cell Phone Class)**

47. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

48. Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and other members of the Cell Phone Class without their prior express consent to receive such calls.

49. Defendant made the telephone calls, or directed them to be made, using equipment that had the capacity to store or produce lists of telephone numbers, equipment that has the capacity to generate and store numbers randomly or sequentially, and the capacity to dial such numbers.

50. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Cell Phone Class simultaneously and without human intervention.

51. By making, or having them made on its behalf, the unsolicited telephone calls to Plaintiffs' and the Cell Phone Class members' cellular telephones without the necessary prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

52. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Cell Phone Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

53. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs Cates and Allison and the other members of the Cell Phone Class.

**SECOND CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5)**
**(On behalf of Plaintiff Allison and the Do Not Call Class)**

54. Plaintiff Allison incorporates by reference the foregoing allegations as if fully set forth herein.

55. 47 U.S.C. §227(c) provides that any "person who has received more than one

11

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

56.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation [to]…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57.     47 C.F.R. §64.1200 (e) provides that §64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

58.     47 C.F.R. § 64.1200 (d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request….

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

59. Defendant violated § 64.1200 (c) by initiating telephone solicitations to wireless telephone subscribers, such as Plaintiff Allison and the Do Not Call Class, who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendant, as set forth in § 64.l200 (d)(3).

60. Defendant made, or directed to be made, more than one unsolicited telephone call

to Plaintiff Allison and the members of the Do Not Call Class within a 12-month period, without the necessary prior express consent to receive such calls.

61. Defendant violated § 64.1200 (d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiff Allison and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Allison and the Do Not Call Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of § 64.1200.

63. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Tranis Cates and Andrew Allison, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above pursuant to Fed. R. Civ. P. 23, appointing Plaintiffs Tranis Cates and Andrew Allison as representatives of the Classes, and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited calling activities, and

otherwise protecting the interests of the Classes;

   4.  An award of reasonable attorneys' fees and costs; and

   5.  Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

  Plaintiffs request a trial by jury of all claims that can be so tried.

             Respectfully submitted,

             **TRANIS CATES and ANDREW ALLISON**,
             individually and on behalf of all others similarly situated,

Dated: March 4, 2015      By: /s/ Stefan L. Coleman
               One of Plaintiffs' Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Ari Scharg
ascharg@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427