IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRANIS CATES and ANDREW ALLISON individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | No. 2:15-cv-1617(MCA)(JBC) |
| | ) | |
| v. | ) | |
| | ) | |
| DUN & BRADSTREET, INC., a Delaware corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT DUN & BRADSTREET, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant Dun & Bradstreet, Inc. ("D&B") submits the following answers and affirmative defenses to the allegations contained in Plaintiffs' Complaint:

### NATURE OF THE ACTION

1.     Defendant D&B is a leading source of commercial data, analytics, and insight on businesses, and owns and operates a commercial database containing information on more than 235 million companies from around the world.

**ANSWER:**     D&B admits the allegations contained in Paragraph 1.

2.     To grow and maintain its database, D&B engages in widespread telephone campaigns to businesses and consumers alike.  Ultimately, D&B uses the information acquired by its telephone campaigns to sell to other companies as "risk and finance solutions, operations & supply solutions, marketing solutions, and sales solutions."

**ANSWER:**     D&B admits that it provides "risk and finance solutions, operations & supply solutions, marketing solutions, and sales solutions."   D&B states that the remaining

allegations in Paragraph 2 do not fairly or adequately represent D&B's business operations and therefore denies the remaining allegations contained in Paragraph 2.

3.       In addition, D&B markets products and services directly to the businesses it calls, such as the "Small Business Start Kit," "DUNS file," "D&B Credibility Review," and many other products aimed at small to medium businesses.

**ANSWER:**     D&B admits that it provides products to businesses, but denies the remaining allegations contained in Paragraph 3.

4.       Defendant's "D&B Credibility Review," for illustration, is an online business directory where a business is provided with a "free" listing but can purchase premium features, such as expanded listings, enhanced keywords that purportedly assist in marketing, and the ability to advertise on competitors' listings.  Annual subscriptions to this service range from $599 to $1,199.

**ANSWER:**     D&B denies that it provides any product called "D&B Credibility Review."  D&B lacks knowledge or information sufficient to form a belief as to any allegations regarding "D&B Credibility Review," and therefore denies the allegations contained in Paragraph 4.

5.       Thus, D&B's purpose for making phone calls to these consumers and businesses is two-fold:  (1) to acquire and confirm business information so as to update and maintain its business database (and to ultimately sell access to that information to other businesses), and (2) to solicit businesses to purchase and/or use D&B's small business products and premium online business directory.

**ANSWER:**     D&B admits that it calls businesses to confirm business information and to update and maintain its business database.  D&B states that the remaining allegations in

- 2 -

Paragraph 6 do not fairly and adequately represent D&B's business operations and therefore denies the remaining allegations contained in Paragraph 6.

6.      Unfortunately, D&B often makes its telemarketing calls to consumers and businesses without prior express consent.

**ANSWER:**     D&B denies the allegations contained in Paragraph 6.

7.      Worse, D&B makes calls to thousands of consumers whose phone numbers are in no way connected to any business.

**ANSWER:**     D&B denies the allegations contained in Paragraph 7.

8.      The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") was enacted to protect consumers from unsolicited and repeated commercial telephone calls exactly like those alleged in this case.  Defendant makes these calls despite the fact that neither Plaintiffs nor the other members of the putative Classes ever provided express consent to receive such telemarketing calls.

**ANSWER:**     D&B denies that the only reason the TCPA was enacted was for the reason stated in the first sentence of Paragraph 8.  D&B denies the remaining allegations contained in Paragraph 8.

9.      Likewise, Defendant placed telemarketing calls to consumers who registered their telephone numbers with the National Do Not Call Registry for the specific reason of avoiding telemarketing calls.

**ANSWER:**     D&B denies the allegations contained in Paragraph 9.

10.      By making the phone calls at issue in this Complaint, Defendant caused Plaintiffs and the other members of the Classes actual harm, including the aggravation and nuisance that

necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

**ANSWER:**    D&B denies the allegations contained in Paragraph 10.

11.    In response to Defendant's unlawful conduct, Plaintiffs filed the instant lawsuit and now seek an injunction requiring Defendant to cease all unsolicited calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**ANSWER:**    D&B admits that Plaintiffs' complaint seeks an injunction and an award of statutory damages, but denies that Plaintiffs' allegations support the relief that Plaintiffs are requesting.  D&B denies the remaining allegations contained in Paragraph 11.

## PARTIES

12.    Plaintiff Tranis Cates is a natural person and resident of the State of Texas.

**ANSWER:**    D&B lacks knowledge or information sufficient to form a belief as to Plaintiff Cates' residency, and therefore denies the allegations contained in Paragraph 12.

13.    Plaintiff Andrew Allison is a natural person and resident of the State of California.

**ANSWER:**    D&B lacks knowledge or information sufficient to form a belief as to Plaintiff Allison's residency, and therefore denies the allegations contained in Paragraph 13.

14.    Defendant Dun & Bradstreet, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 103 John F Kennedy Parkway, Short Hills, New Jersey 07078.  Dun & Bradstreet does business throughout the United States, the State of New Jersey, and in this District.

**ANSWER:**    D&B admits the allegations contained in Paragraph 14.

- 4 -

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., which is a federal statute.

**ANSWER:**     D&B admits that this action arises under a federal statute.  The remaining allegations contained in Paragraph 15 are legal conclusions to which no answers are required. To the extent answers are required, D&B denies the remaining allegations contained in Paragraph 15.

16.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District and its headquarters are located in this District.

**ANSWER:**     D&B admits that it transacts business in the District of New Jersey and that its principle place of business is in this District.  The remaining allegations contained in Paragraph 16 are legal conclusions to which no answers are required.  To the extent answers are required, D&B denies the remaining allegations contained in Paragraph 16.

**COMMON FACTUAL ALLEGATIONS**

17.     Defendant D&B services two types of customers:   business looking for information on other companies and businesses seeking to enhance and promote their own products and services.  For its first category of customers, Defendant operates and maintains an immense database containing information on businesses around the world.  For its second category of customers, Defendant sells premium online business listings that purportedly improve a company's marketing capabilities and credibility.

**ANSWER:**     D&B admits that it operates and maintains a database containing information on businesses around the world.  D&B states that the remaining allegations in

- 5 -

Paragraph 17 do not fairly and adequately represent D&B's business operations and therefore denies the remaining allegations contained in Paragraph 17.

18.     In an effort to promote these products and services, Defendant made (or had made on its behalf) thousands of telephone calls to members of the Classes, including Plaintiffs, without consent (and in spite of the fact that many were registered on the National Do Not Call Registry).

**ANSWER:**    D&B denies that it calls individual consumers.  D&B further denies the existence of the putative classes that Plaintiffs seek to represent.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 18, and therefore denies the remaining allegations contained in Paragraph 18.

19.     Defendant's calls begin as free, innocuous offers to let businesses "update their records" maintained by D&B.  However, the underlying purpose of these calls is to introduce the business to D&B so that Defendant can sell its products and services, such as its premium business directory listings.

**ANSWER:**    D&B denies the allegations contained in Paragraph 19.

20.     Oftentimes, D&B makes these calls without the prior consent of the businesses. And in its zeal to maintain the industry's largest business directory, D&B calls consumers on their personal telephones even when they do not currently own any businesses or phone numbers that have ever been associated with a business.

**ANSWER:**    D&B denies that it calls individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 20, and therefore denies the remaining allegations contained in Paragraph 20.

21.     Nevertheless, Defendant makes these unsolicited calls daily.  Worse, when a consumer answers one of Defendant's calls and expressly requests to not receive any further calls, Defendant persists—*even after multiple requests for Defendant to stop calling*.

**ANSWER:**   D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 21, and therefore denies the remaining allegations contained in Paragraph 21.

22.     In making the phone calls at issue in this Complaint, Defendant utilized an automatic telephone dialing system.  Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.  Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

**ANSWER:**   D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 22, and therefore denies the remaining allegations contained in Paragraph 22.

23.     All the more problematic, many of the call recipients, like Plaintiff Allison, were registered on the National Do Not Call Registry at the time the calls were made.  That is, those consumers had taken the affirmative step to be listed in a national database for the express purpose of not receiving telemarketing calls.

**ANSWER:**   D&B denies that it made phone calls to individual consumers.  D&B further denies that it made any calls to Plaintiff Allison.  D&B lacks knowledge or information sufficient to form a belief as to whether Plaintiff Allison or other persons are registered on the

National Do Not Call Registry, and therefore denies such allegations.  D&B denies the remaining allegations contained in Paragraph 23.

24.     Defendant did not abide by the National Do Not Call Registry and did not institute proper internal do-not-call procedures to prevent calls from being made to (1) telephone numbers listed on the National Do Not Call Registry and (2) telephone numbers that were (or should have been) listed on its internal do-not-call list as a result of consumers requesting not to be contacted.

**ANSWER:**     D&B denies the allegations contained in Paragraph 24.

25.     Neither Plaintiffs nor the other members of the putative Classes ever consented to have Defendant make telemarketing calls to them.

**ANSWER:**     D&B denies the existence of the putative classes that Plaintiffs seek to represent.  D&B further denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 25 and therefore denies such allegations.

26.     Plaintiffs' experiences are corroborated by numerous consumer complaints appearing online.  For example, over one hundred complaints have been reported online for just one of the phone numbers D&B used to call Plaintiff Cates.[1]  On information and belief, Defendant uses a host of distinct telephone numbers to place its telemarketing calls to consumers and business.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of "Plaintiffs' experience[s]" or "consumer complaints" and therefore denies the allegations

---

[1] *Getting calls from 973-852-4473?   11/11*, http://800notes.com/Phone.aspx/1-973-852-4473/9 (last visited Mar. 2, 2015).

contained in the first sentence of Paragraph 26.  D&B denies the remaining allegations contained in Paragraph 26.

27.     The large number of consumer complaints indicate that Defendant placed calls to consumers without permission and on a repeat basis.  Indeed, Defendant made the calls despite not having the necessary consent to do so at the time the calls were effectuated, and worse, even after it received repeated requests from Plaintiffs and the members of the putative Classes to stop.

**ANSWER:**     D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 27, and therefore denies the remaining allegations contained in Paragraph 27.

## FACTS SPECIFIC TO PLAINTIFF CATES

28.     Plaintiff Cates started receiving daily calls from (973) 852-4473 on his personal cellular phone number.

**ANSWER:**     D&B denies the allegations contained in Paragraph 28.

29.     Cates has had his personal cellular phone number for more than ten years and has never listed or used it for any business purpose.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 29, and therefore D&B denies the allegations contained in Paragraph 29.

30.     Specifically Cates received numerous calls throughout December 2014, including, at least, on December 17th, 18th, 19th, 22nd, 23rd, and 24th.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 30, and therefore D&B denies the allegations contained in Paragraph 30.

31.     On December 19, 2014, Cates answered the call and heard a several-second delay on the other end of the line until a live operator came on the line and identified herself as a D&B agent.  As soon as the live operator went into the sales pitch described above, Plaintiff told the agent that he was not interested and requested that he not be called again.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 31, and therefore D&B denies the allegations contained in Paragraph 31.

32.     Despite his request, Cates received at least three more calls from Defendant.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 32, and therefore D&B denies the allegations contained in Paragraph 32.

33.     Thereafter, Cates called the phone number (973) 852-4473 on at least two occasions in an effort to stop the calls.  Each time Plaintiff called, he was greeted by a recorded message stating, "Thank you for calling Dun & Bradstreet...if you're returning our call, we did call you in an attempt to update our records.  You don't have to do anything at this time, we'll call back later to collect the data.  Thank you for calling Dun & Bradstreet."

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 33, and therefore D&B denies the allegations contained in Paragraph 33.

34.     Plaintiff Cates never authorized D&B to call him on his cell phone and he has no relationship with D&B.

**ANSWER:**     D&B admits that Plaintiff Cates never entered into a relationship with D&B.  D&B lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations stated in Paragraph 34, and therefore D&B denies the remaining allegations contained in Paragraph 34.

35.     Defendant was and is aware that the above-described telephone calls were being made, and that the telephone calls were being made to consumers, despite the fact that Defendant did not have the necessary consent to make such calls.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 35, and therefore denies the allegations contained in Paragraph 35.

### FACTS SPECIFIC TO PLAINTIFF ALLISON

36.     Plaintiff Allison began receiving calls on his cellular telephone in or around September 2014 from several different phone numbers with an area code of 831.  When he would answer the call, an operator would identify themselves as a D&B agent and begin the conversation by requesting information to update credit information for a business he purportedly owned.

**ANSWER:**     D&B lacks knowledge or information sufficient to form a belief as to whether Plaintiff Allison received calls from phone numbers with the area code of 831.  D&B denies that it made any calls to Plaintiff Allison.   D&B denies the remaining allegations contained in Paragraph 36.

37.     Plaintiff answered many of Defendant's calls and requested each time that Defendant stop calling.

**ANSWER:**     D&B denies that it made any calls to Plaintiff Allison.  D&B denies the remaining allegations contained in Paragraph 37.

38.     Plaintiff Allison does not own any businesses and has been retired for more than ten years.

**ANSWER:**   D&B lacks knowledge or information sufficient to form a belief as to Plaintiff Allison's retirement or business ownership business, and therefore denies such allegations.  D&B denies the remaining allegations contained in Paragraph 38.

39.   To make matters worse, Plaintiff Allison registered his cellular telephone number on the National Do Not Call Registry many years ago and has continuously re-registered his number.   Plaintiff Allison most recently re-registered his cellular phone number with the National Do Not Call Registry on February 15, 2014, more than thirty days prior to receiving calls from Defendant.

**ANSWER:**   D&B lacks knowledge or information sufficient to form a belief as to whether Plaintiff Allison is registered or re-registered on the National Do Not Call Registry, and therefore denies such allegations.  D&B denies the remaining allegations contained in Paragraph 39.

40.   Overall, Defendant placed numerous calls to Plaintiff Allison that he neither wanted nor consented to.

**ANSWER:**   D&B denies that it called Plaintiff Allison.  D&B denies the remaining allegations contained in Paragraph 40.

## CLASS ALLEGATIONS

41.   Plaintiff Cates and Plaintiff Allison bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and a Class of similarly situated individuals defined as follows:

**Cell Phone Class**:   All individuals in the United States who (1) received a telephone call on their cellular telephone; (2) from or on behalf of Dun & Bradstreet (3) for which the caller had no record of prior express written consent to make such telephone call at the time it was made.

- 12 -

Plaintiff Allison brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> **<u>Do Not Call Class</u>**:   All individuals in the United States (1) who had his or her cellular telephone number(s) registered with the National Do Not Call Registry; (2) to whom Defendant Dun & Bradstreet or an agent acting on their behalf made more than one telephone call; (3) promoting Defendant Dun & Bradstreet's services; (4) within any 12-month period; and (5) for whom Defendant Dun & Bradstreet or its agents had no current record of express consent to make such telephone calls at the time they were made.

The following people are excluded from the Classes:  (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**<u>ANSWER:</u>**    D&B admits that Plaintiffs seek to bring this action on their own behalf and on behalf of the putative classes described in Paragraph 41.  D&B further admits that Plaintiffs seek to exclude from the proposed putative classes the individuals described in Paragraph 41 as so excluded.  D&B denies the remaining allegations contained in Paragraph 41.

42.    **Numerosity**:  The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.  On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes.  Members of the Classes can be identified through Defendant's records.

**ANSWER:**    D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 42, and therefore denies the remaining allegations contained in Paragraph 42.

43.    **Typicality**:  Plaintiffs' claims are typical of the claims of the other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

**ANSWER:**    D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 43, and therefore denies the remaining allegations contained in Paragraph 43.

44.    **Adequate Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions.  Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

**ANSWER:**    D&B denies the existence of the putative classes that Plaintiffs seek to represent.  D&B denies the remaining allegations contained in Paragraph 44.

45.    **Commonality and Predominance**:  There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.   Common and predominant questions for the Classes include, but are not necessarily limited to, the following:

(a)    whether Defendant's conduct violated the TCPA;

(b)    whether Defendant made telephone calls to the Cell Phone Class members utilizing an automatic telephone dialing system;

(c) whether Defendant systematically made telephone calls to members of the Cell Phone Class and the Do Not Call Class who did not provide Defendant with their prior express consent to receive such telephone calls as required by the TCPA;

(d) whether Defendant systematically made telephone calls to members of the Do Not Call Class whose telephone numbers were registered with the National Do Not Call Registry; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

**ANSWER:** D&B denies the existence of the putative classes that Plaintiffs seek to represent. D&B denies the remaining allegations contained in Paragraph 45.

46. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Class Action Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**ANSWER:**   D&B denies the allegations contained in Paragraph 46.

## FIRST CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On behalf of Plaintiffs Cates and Allison and the Cell Phone Class)

47.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

**ANSWER:**   D&B restates and incorporates by reference each of its preceding answers and denials to the above Paragraphs as though fully set forth herein.

48.    Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and other members of the Cell Phone Class without their prior express consent to receive such calls.

**ANSWER:**   D&B denies that it made phone calls to individual consumers.  D&B further denies the existence of the Cell Phone Class that the Plaintiffs seek to represent.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 48, and therefore denies the remaining allegations contained in Paragraph 48.

49.    Defendant made the telephone calls, or directed them to be made, using equipment that had the capacity to store or produce lists of telephone numbers, equipment that has the capacity to generate and store numbers randomly or sequentially, and the capacity to dial such numbers.

**ANSWER:**   D&B denies that it made phone calls to individual consumers.  D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 49, and therefore denies the remaining allegations contained in Paragraph 49.

50.     Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Cell Phone Class simultaneously and without human intervention.

**ANSWER:**   D&B denies that it made phone calls to individual consumers.   D&B further denies the existence of the Cell Phone Class that the Plaintiffs seek to represent.   D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 50, and therefore denies the remaining allegations contained in Paragraph 50.

51.     By making, or having them made on its behalf, the unsolicited telephone calls to Plaintiffs' and the Cell Phone Class members' cellular telephones without the necessary prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

**ANSWER:**   D&B denies that it made phone calls to individual consumers.   D&B further denies the existence of the Cell Phone Class that the Plaintiffs seek to represent.   D&B lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 51, and therefore denies the remaining allegations contained in Paragraph 51.

52.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Cell Phone Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

**ANSWER:**   D&B denies the allegations contained in Paragraph 52.

53.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs Cates and Allison and the other members of the Cell Phone Class.

**ANSWER:**     D&B denies the allegations contained in Paragraph 53.

**SECOND CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5)**
**(On behalf of Plaintiff Allison and the Do Not Call Class)**

54.     Plaintiff Allison incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER:**     D&B restates and incorporates by reference each of its preceding answers and denials to the above Paragraphs as though fully set forth herein.

55.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

**ANSWER:**     D&B states that the TCPA's provisions speak for themselves, and D&B denies the allegations contained in Paragraph 55 to the extent they misquote, misinterpret or misrepresent the TCPA's provisions.

56.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation [to]...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

**ANSWER:**    D&B states that the TCPA's provisions speak for themselves, and D&B denies the allegations contained in Paragraph 56 to the extent they misquote, misinterpret or misrepresent the TCPA's provisions.

57.    47 C.F.R. §64.1200 (e) provides that §64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists.  For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers.  We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

**ANSWER:**    D&B states that the TCPA's provisions and the FCC's regulations and amendments interpreting the TCPA speak for themselves, and D&B denies the allegations contained in Paragraph 57 to the extent they misquote, misinterpret or misrepresent the TCPA's provisions or the FCC's regulations and amendments.

58.    47 C.F.R. § 64.1200 (d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  The procedures instituted must meet the following minimum standards:

> (1) Written policy.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing.  Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests.  If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request....

(4) Identification of sellers and telemarketers.  A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.  The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities.  In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists.  A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.  A do-not-call request must be honored for 5 years from the time the request is made.

**ANSWER:**   D&B states that the TCPA's provisions and the FCC's regulations and amendments interpreting the TCPA speak for themselves, and D&B denies the allegations contained in Paragraph 58 to the extent they misquote, misinterpret or misrepresent the TCPA's provisions or the FCC's regulations and amendments.

59.   Defendant violated § 64.1200 (c) by initiating telephone solicitations to wireless telephone subscribers, such as Plaintiff Allison and the Do Not Call Class, who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendant, as set forth in § 64.l200 (d)(3).

**ANSWER:**   D&B denies that it made any call to Plaintiff Allison. D&B denies the remaining allegations contained in Paragraph 59.

60.    Defendant made, or directed to be made, more than one unsolicited telephone call to Plaintiff Allison and the members of the Do Not Call Class within a 12-month period, without the necessary prior express consent to receive such calls.

**ANSWER:**   D&B denies that it made any call to Plaintiff Allison. D&B denies the remaining allegations contained in Paragraph 60.

61.    Defendant violated § 64.1200 (d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiff Allison and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

**ANSWER:**   D&B denies that it made any call to Plaintiff Allison. D&B denies the remaining allegations contained in Paragraph 61.

62.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Allison and the Do Not Call Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of § 64.1200.

**ANSWER:**   D&B denies that it made any call to Plaintiff Allison.   D&B denies the remaining allegations contained in Paragraph 62.

63.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Class.

**ANSWER:**   D&B denies the allegations contained in Paragraph 63.

## AFFIRMATIVE DEFENSES

D&B, for its Affirmative Defenses to Plaintiffs' Complaint, states as follows:

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

1.     The allegations in Plaintiffs' Complaint fail to state a claim for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

(Reasonable and Good Faith Conduct)

2.     D&B's actions, or the actions taken on behalf of D&B, were taken in good faith, in reliance upon information provided by its customers and others, and with a reasonable belief that such actions were legal, appropriate and necessary.   The conduct alleged to be in violation of statute, if any such conduct occurred, was purely unintentional, and occurred, if at all, despite D&B's reasonable and appropriate efforts to avoid any such violation.

## THIRD AFFIRMATIVE DEFENSE

(Conduct of Third Parties)

3.     Plaintiffs' claims for relief arise out of the negligence, carelessness and/or intentional acts of other persons and parties, and this negligence, carelessness and/or intentional conduct proximately caused and/or contributed to the alleged incidents such that any liability of D&B should be reduced or eliminated.   D&B reserves the right to assert claims against such

- 22 -

third parties for indemnification and/or contribution.

## FOURTH AFFIRMATIVE DEFENSE

### (Safe Harbor)

4.      D&B alleges that Plaintiffs' claims for relief are barred because D&B's conduct complied with the provisions of the applicable F.C.C. regulations, including without limitation the safe harbor provisions of 47 C.F.R. § 64.1200.

## FIFTH AFFIRMATIVE DEFENSE

### (No Authority)

5.      D&B did not authorize, ratify, encourage, participate in, aid or abet any of the alleged actions of its agents or other third-parties acting on D&B's behalf.

## SIXTH AFFIRMATIVE DEFENSE

### (Violation of Constitution)

6.      The TCPA, codified at 47 U.S.C. § 227, as asserted by Plaintiffs, violates the First Amendment of the United States Constitution.

## SEVENTH AFFIRMATIVE DEFENSE

### (Violation of Constitution/Due Process)

7.      The fines and/or penalties sought by Plaintiffs pursuant to the TCPA violate the Excessive Fines Clause of the Eighth Amendment, and the Takings Clause of the Fifth Amendment of the United States Constitution.

## EIGHTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

8.      Plaintiffs' claim for injunctive relief is barred because Plaintiffs cannot establish, among other things, that they do not have an adequate remedy at law.

## NINTH AFFIRMATIVE DEFENSE

### (Improper Class)

9.     The putative classes Plaintiffs purport to represent are unmanageable and unascertainable, and Plaintiffs are not appropriate class representatives of such classes, as they have not suffered any injuries common to the classes they purport to represent.

### TENTH AFFIRMATIVE DEFENSE

(No Duplicative Relief)

10.    To the extent that any relief sought by Plaintiffs would be duplicative of relief sought by other plaintiffs in other lawsuits, subjecting Defendant to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendments of the United States Constitution.

### ELEVENTH AFFIRMATIVE DEFENSE

(Lack of Control)

11.    Any purported damages to Plaintiffs or the purported class members, which D&B continues to deny, are the result of the acts or omissions of persons or entities over whom D&B has neither control nor responsibility.

### TWELFTH AFFIRMATIVE DEFENSE

(Defenses As To Each Putative Class Member)

12.    D&B may have additional unique affirmative defenses applicable to different putative members of Plaintiffs' proposed classes.  D&B reserves the right to assert such additional affirmative defenses as the need arises, insofar as class certification has not been granted and is not appropriate in this case.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Substantial Compliance With Laws)

13.    D&B is not liable to Plaintiffs or members of any purported class because D&B acted reasonably and with due care and substantially complied with all applicable statutes, regulations, ordinances, and/or other laws.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Proportional Allocation of Fault)

14.     Any damage, loss or liability sustained by Plaintiffs or members of any purported class must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than D&B, including other parties in this case and/or third parties, under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Reservation of Defenses)

15.     D&B presently has insufficient knowledge or information on which to form a belief as to whether D&B may have additional, separate defenses to Plaintiffs' claims. These separate and additional defenses require discovery before they can be properly alleged. D&B reserves the right to assert such separate and additional defenses after they are ascertained by D&B or according to proof at trial.

**WHEREFORE,** this answering defendant demands judgment dismissing the Complaint, together with interest, costs, attorneys' fees and disbursements incurred in connection with the defense of this action.

## JURY DEMAND

Defendant requests a trial by jury of all claims that can be so tried.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned certifies that the matter in controversy is not the subject of any other action pending in this court.

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 5.1</u>

Margot Wilensky certifies that she caused a copy of this Answer to be served via ECF on

the following:

> Stefan L. Coleman, Esq.
> LAW OFFICES OF STEFAN COLEMAN, LLC
> 1072 Madison Avenue, Suite 1
> Lakewood, New Jersey 08701
> Telephone: (877) 333-9427
> Attorneys for Plaintiffs

> Rafey S. Balabanian, Esq.
> rbalabanian@edelson.com
> Ari Scharg, Esq.
> ascharg@edelson.com
> Alicia Hwang, Esq.
> ahwang@edelson.com
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, Illinois 60654
> Telephone: (312) 589-6370
> Fax: (312) 589-6378

Dated: July 31, 2015

> Respectfully Submitted,
>
> **DUN & BRADSTREET, INC.**
>
> By:  /s/ Isaac Colunga (*Admitted Pro Hac Vice*)
> Bart Murphy, Esq.
> Isaac Colunga, Esq.
> ICE MILLER LLP
> 200 W. Madison Street, Suite 3500
> Chicago, IL 60606-3417
> Telephone: (312) 726-1567
> isaac.colunga@icemiller.com
>
> *-and-*
>
> By: /s/ Margot Wilensky
> Margot Wilensky (MW-3181)

HAWORTH COLEMAN & GERSTMAN, LLC
45 Broadway, 21st Floor
New York, NY 10006
Telephone: (212) 952-1100
margot.wilensky@hcglawfirm.com